There are three questions presented in this case, and I'm going to move right into the first question, which is whether a state law requiring that local governments which contract for or otherwise provide health care insurance coverage to current employees shall make that coverage available to retirees to the extent possible. Whether it sufficiently restricts discretion to create a property interest under the Due Process Clause. In this situation, you filed an action in the state court as well, correct? Correct. And as I've examined the two pleadings, with the exception of the jurisdictional allegations and a few other little nits and nats, they're almost identical. Factual allegations are identical. Right, okay. Under those circumstances, why does it make sense for a federal court to hear this case, with the possible exception of the ADEA portion, why shouldn't we practice abstention, let the state move forward, and decide this state law issue in the state court? Is the question today, looking at the case today, or as it was when it was filed? Today. That's all we can deal with is today. We can't deal with it in the past. But right now, why should the Ninth Circuit rule on this issue when you have very capable courts in the state of Oregon that are already engaged in the viewing in a virtually identical complaint deciding a state cause of action? Let me first answer your question directly, but then I have some disagreement with how it's characterized. Frankly, under the Portman case, I think that the proper resolution of the appeal would be to send it back to Judge Panner with instructions to stay the proceeding until a final judgment is entered in Doyle. And by final judgment, I just mean a judgment in the circuit court. I don't think it needs to wait to go through the appellate process. But as I understand Portman, this circuit has said that the question of entitlement should be resolved first under state law before addressing the constitutional issues. And that's what should have happened in the first instance in the U.S. District Court when the case was filed. Now that there are two separate proceedings going on, it still should happen. But I think that where I disagree with you, Judge, is I don't agree that they are the same actions, the same claims. There were good reasons that this was initially filed in federal court. The property interest claims have different law, different relief, and different statute of limitations, all of which make that significant. But the meaning of that statute and what it actually requires a municipal employer to do is a question of state law. Correct. And it informs the due process decision. It has to because if the state court, for example, reads into the practicable language that that includes financial practicality or that that includes where there's a union on the other side where it includes the requirement that that union agree, then the answer may be different than if it says, boy, possible means possible. You've got to really go out there and try everything you can. So those two answers would create very different answers to the due process claim. And where I agree with you is that if the state court interprets the law as giving unbridled discretion or a great degree of discretion to the local entity, that's going to inform the due process claim. So, I mean, we agree that there needs to be an interpretation of the state law. The state law may dispose of the property interest claim or it may not. Certainly as the decision currently sits in the Jackson County Circuit Court, our view would be that it establishes there's going to be a property interest. Well, this seems like the kind of case in the state court system that could work its way up to the Oregon Supreme Court at some point to determine the requirements of this statute. And if there weren't this parallel proceeding, we might consider certification. But it seems unlikely that the court would accept it coming this way when it could come up through the normal process. So we're in kind of an odd box. And we're in an odd box too, Judge. In the district court, we discussed certification. The issue at that point in time was we wanted discovery, just very frankly. And Judge Panner wouldn't give it to us. And Medford wouldn't give it to us. In the state court proceeding, we've now got discovery. And it's difficult to merge those now and say that this court should certify to the state court without the same factual record that's been developed. Be that as it may, the thing that I would say is that from my review of the federal authorities, I don't believe that this court has authority to decide the state law issue at this point in time. I mean, that's the way I read it. Why wouldn't we have authority? The state courts don't care what we say about it. They're not bound by it. But why don't we have the authority? I mean, you brought us a lawsuit that says that by doing X under the statute, that's a constitutional violation. So we have to decide what the statute means. Correct. In the authorities I submitted to the court on February 26th, I cited the West v. AT&T case, the Supreme Court case, that concerns the Judiciary Act, which held that decisions of state courts are state rules of law just as state statutes that must be followed, particularly when it's in the same case. My understanding of that case is that what it means is that this court would have to honor even the interim rulings of Judge Shively in the Jackson County Circuit Court. I mean, even though that's only an interlocutory situation, why would we have to honor that? Because it is a state rule of law. It's not binding in state court. And under full faith and credit, why would we give it more authority than it would have under Oregon law? Because under Oregon law, that judge can change his mind any time. There's been no final judgment. Correct. So tomorrow he could say, you know, that was really ill-advised. I'm just going to replace that, reconsider it. Correct. I agree with you. But that, I don't think that it means, I don't think that it binds you. As I understand West v. AT&T, it deprives the court of the power to adjudicate that state law issue in a different fashion. So, I mean, it does. That's an interesting reading of it. Well, I mean. Let me ask you, so this relates back to the previous case in a way. And in your prayer for relief, you have the typical kind of closing line, which is that you want such other legal and equitable relief as may be just and proper in the circumstances or the usual formulation. So theoretically, that opens the possibility of asking for equitable relief. Theoretically. Why wouldn't you be able to ask for that in this case, in theory? In joining, applying to, well, you know. By saying you have violated our rights, please don't do it in the future. I believe that the retirees are differently situated than the current employees. And there may be differing interests. I don't believe that the retirees could represent the class of current employees. It's because of the class nature of it that you have a problem. If you had a single plaintiff who said, you know, I want my money and don't do this in the future, you could get an injunction saying don't do this in the future to me. And it would obviously have an effect on everybody else. But the retirees aren't current employees. You know, the problem with the injunctive relief claim is that on a factual basis, it's going to be impossible for the city to provide group health insurance coverage to people who have already retired. Nobody, no health insurance company will pick up a group of folks who are retired. Well, why is that the case? I mean, it's an underwriting decision on their part. Why couldn't the city, if the state law were construed by the appropriate tribunal to require the city to do that, why couldn't the city simply go to its carrier and say, look, we've got this obligation here. We've got this class of people. And, you know, we'd like to find out what the cost would be to cover you. Why wouldn't they do that? I know they're not required to do it under the current contract. Right. But if the city were obliged to do it otherwise, isn't this just an economic decision on the part of the two parties? Well, you know, I guess my response to that is that typically you would be dealing with a class of individuals that include younger folks and retirees. If the focus is, you know, a special class, a special group of 20, 30, 50, 75 folks. Well, that increases the premium. There's no question about that because of the age of the people involved. But, I mean, is it not at bottom an economic decision, an underwriting decision? It is at bottom an economic and underwriting decision. And at bottom it would be determined probably based upon whether an insurance company could adequately and accurately assess the risk of insuring a group like that. That's what insurance companies do. They take their shot at what they think the risks are and see if they can make a profit on human misfortune. I agree. I agree. I don't dispute that. So that being the case, in answer to Judge Graber's question then, why couldn't Ms. Doyle get an injunction in her action? Applying to himself. Himself. The issue of whether or not it was possible to cover Doyle individually and give him group coverage would be a factual determination that would depend upon the record. In this case, since there was no discovery, you know, I don't know that I can respond further than that. But I think that the court is correct, that the complaint contains the ability to seek injunctive relief, and that would be something that should be developed. I think that was the point, was that, you know, obviously you have to develop the case. You have to develop the record. But assuming for a moment, arguendo, that you got the right to do that, all you need to do is, like any other aspect of the complaint, you'd have to go forward and fill in the blanks with discovery and then make your presentation at the court. But there's nothing hypothetically that would stop you from getting an injunction in this action for Doyle. Other than what we've discussed, which is going to be a fact determination and that those facts aren't before the court or really in my possession. Okay. The, I want to talk a little bit about the, I have diminishing time here. I want to talk a little bit about the age discrimination claim also. Because I believe that the federal age discrimination claim, in some sense, the dog gets, the tail wags the dog and got short shrift in this case. The federal age discrimination claim, in our view, is a substantial claim. How do you get around the Hazen paper analysis that age and retirement are analytically distinct? Well, I don't believe that Hazen held that age and retirement are analytically distinct. I think that Hazen held that age and pension status are analytically distinct. And that it depended upon the underlying facts in the specific program. For example, as in Local 350, where there was evidence that retirement was connected, closely connected with age, then they weren't analytically distinct. Well, I don't know whether this is in the record or just from our colloquy in the previous case, but apparently there is no mandatory retirement age. So there could be older employees who are active employees, older than some of the retired employees. Well, that's possible. But the question is, what's the retiree class and is it closely connected to age? For example, if there are age requirements to retire, age 55 is the retirement age, then retirement is connected to age. And so, you know, that addresses the Hazen paper issue, frankly. And in this case, the plausible defenses to the age discrimination claim are that we don't have to treat retirees the same as active employees. The plausible differentiation between the retirees and the active employees may be that the cost of insurance is different, something of that nature. But the statute defines, 243303, defines retirees as being similarly situated to current employees to the extent it's possible to secure the same insurance. The ADEA applies to employee benefits. And there is federal case law holding that retirees are employees for purposes of the ADEA. Therefore, to the extent that the statute makes them similarly situated, a differentiation based among the two groups is age discrimination. And that, in particular, leads to the importance of the statement by Mr. Dial that Mr. Doyle alleges in his complaint. I don't care what the law says, the city is not going to spend a dime on retirees. To the extent that retirement is closely connected with age, that is direct evidence of age discrimination in the context of a case where you have a state law that makes retirees similarly situated to current employees. Thank you. Thanks, Counsel. We'll hear from the city. I want to just hit the points raised that you've raised that I think you want some response to. I just want to point out that the people that retire from the city of Medford do have health care coverage under PERS. So your question is why can't these retired people be covered? They are covered. And the city has paid money for that. They just want this particular insurance that they currently have, arguably because the premium will be cheaper than what they have to pay PERS for their health care benefits. Could we explain that? So you're saying that the current employees have Plan A, the retirees have Plan B, which is health insurance but different than Plan A. Is that correct? Plan A, actually, OTEC, the trust, gets the insurance for these particular people. That's Plan A. The city, when it contributes to its retirement program, has to set aside a certain percentage for PERS health care. That's Plan B. Plan B costs X dollars. The employee pays the premium when he retires. So you retire, now you have to pay your premium. Plan B, being PERS, arguably is higher than Plan A. I see. But in this complaint, is the plaintiff asking for the same insurance as Plan A in this hypothetical, or are they just saying we want the city to pay for Plan B that we now have to pay for ourselves? What they're actually asking for damage is they're going to say we can get PERS insurance. It costs, let's just give you a hypothetical, it costs $1,500 a month. Right. But if we can have the insurance that we had when we were employees, that only costs $1,000 per month. Thus, our damages are $500. But, of course, that doesn't necessarily make sense because if the group included the retirees also, the cost of the insurance would go up for everyone. So it might end up being $1,500 anyway. It's just a different plan. Exactly. There's no way actuarially to know that that would pan out. Right. The statute, as I read it, does not require the city even if it offers this insurance to pay for it. Correct. The second thing is when Judge Panner had this case, there was no state law lawsuit. So he said, gentlemen, let's certify this directly to the Supreme Court of Oregon. And I said, great, let's get that statute analyzed right now. The plaintiff supposed it. And so we're now in the situation where you're thinking, okay, we need a ruling on this state statute. Of course, I would love you to certify it directly to the Oregon Supreme Court because then I can get right there and we can solve a lot of problems correctly. Another thing that's becoming very important. That would relate obviously not to the ADEA claim but to the due process claim. Correct. And another thing that now as things are developing, what process is due? You know, if you take the analysis under Lou Jan versus G&G Fire Sprinkler, Inc., the United States Supreme Court case that said not every breach of contract gives rights to due process. And so when you have a breach of contract, even if there's a property interest, the process that is due is that you have a breach of contract claim in state court. Okay, now taking a look at this, we now have an indication that perhaps the state court judge is going to say there's a civil remedy for violating this statute. Okay. If that stands, is that all the process that is due? So it's even becoming more important in a sense that we understand if there's a civil remedy for that statute that would sure alleviate your job a lot easier if the court did find a civil remedy than you would merely say we're not going to hassle whether or not there's a property interest. We're going to just say that the process due is your breach of your civil remedy. So from the city's perspective, you want us to just stay out of it because there's no way for us to determine what we need to deal with until the state of Oregon's law has been construed in such a way whether you know the process has been satisfied. I want you to stay out of it but go to the Supreme Court. Help me get to the Supreme Court fast. Well, as the waiver pointed out, you know, we can't really certify it anymore given the situation. But are you asking us to abstain from doing anything and just have the federal court stand by while the state court does its process? Initially I was not. But the more we get into this now that they're finding the civil remedy, now I am asking that. Well, I suppose we could certify it. The question is whether they would take it, saying there's a case coming our way in the normal process. But look at the years we're talking about. And, you know, we're not the only city doing this. And if we would certify this right now to the Supreme Court, we're going to get the answer exactly on the face of it. And they're also going to – you know that the dealings with the Supreme Court of Oregon now, if you read their opinions, they're doing elaborate legislative history studies. And there's 20 tapes. The legislative history on this statute, you know, started in 1980. So we have cities and counties, you know, City of Medgar is not the only one. So instead of three years from now, and at the cost and expense of two trials, if this would go right to the Supreme Court, the economic savings would be tremendous. And that's what Judge Banner was thinking. I take it the Oregon Supreme Court could make the decision that Judge – former Justice, now Judge Braver alluded to. They could decide, I gather, that they don't want to accept certification because it's percolating, but they could also – there's nothing that precludes them from saying, for the reasons you're just giving, this is a statewide interest. They could decide whether to respond favorably or not. Yes. And does the ADEA, with respect to the ADEA claim, I understand that Oregon law follows the federal ADEA. Correct. Is there anything that would commend including that as part of the certification, have them reach an ADEA issue or not? Well, you know, at first blush you'd think not. But when we're tying it to the statute, when we're tying it to the statute saying that basically the statute itself, you know, is requiring this, I'm not so sure you can't bootleg that as a second question. You know, because the – well, see, my position is the statute violates the Aged Discrimination Act because of Erie Canal. Because the statute provides retiree benefits until you're 65 or now 68 Medicare. So the statute itself cuts off coverage solely because of age. So my position was that in the Erie Canal case where EEOC helped establish that you can't, once you start providing coverage to retirees, you can't distinguish between them. So my position was in 19 – in 2001 when this was all – if we had followed that statute, we'd have violated the Aged Discrimination Act. Now Erie Canal, you know, weaved its way up to the Supreme Court of the United States and after Erie Canal they found that you could not distinguish, once a person retired you couldn't cut his benefits off because of age. EEOC wanted to promulgate a rule saying a bridging like that, bridging to Medicare is legal. And so then the EEOC supported that rule and now it's gone up to the Supreme Court, denied cert, and now there is a rule promulgated that you can have a bridging statute like Oregon's bridging statute and it doesn't violate the Aged Discrimination Act. But when each one of these people retired, that rule was not in effect. So my position was, well, this statute itself violates the Aged Discrimination Act because it solely cuts off benefits because of age. I think those are the points that you raised. That's all I had to raise. Thank you. Counsel. You've used your time, but you may have two minutes for rebuttal. Thank you, Your Honor. I'll just briefly highlight three or four points I want to make. Number one, with respect to the argument that the retirees have PERS and it just costs more. In fact, the coverage is different. So there's more than simply the cost. One of the things that makes the cost high is that it is all a pool of people who can't get other kind of insurance. So the premiums are very high for the PERS insurance and they're going to be higher than the CITES group even if the retirees went into the CITES group. Defense said plaintiff opposed certification to the Supreme Court and the U.S. District Court. In fact, our position was certification is appropriate after discovery, and that is because one of the criteria for certification to the Oregon Supreme Court is that the court likes to have a summary judgment record. It even articulates as one of the criteria whether the case has gone through summary judgment or through trial. The court asked as to whether the state ADEA followed the federal ADEA. It does not. There are substantive differences between the two laws, particularly the age of people who are protected. State law protects all people of all ages from discrimination based upon age, even youthful people. The state ADEA does not have the same defenses as the federal law, so the claims are substantively different. I didn't understand either of you to be suggesting that those issues needed to be certified, though. I was not suggesting it. Yeah, no, but your position as well as your opponent's position, it seems to be that that law is clear enough, state law. I believe so. Okay. And I think that those were the only points that I wanted to make. Thank you. Thank you, counsel. Very interesting case. We appreciate the arguments from both of you. The case just argued is submitted, and we will take about a ten-minute recess.
judges: Graber, Fisher, Smith